JOSEPH M. ADAMS (SBN 245156)
jadams@adamspham.com
JEFF H. PHAM (SBN 242429)
jpham@adamspham.com
DONALD A. GREEN (SBN 225171)
dgreen@adamspham.com
ADAMS & PHAM APC
575 Anton Boulevard, 3rd Floor
Costa Mesa, California 92626
Telephone: (714) 505-2121
Facsimile: (714) 505-2122

Attorneys for Plaintiff,
DAVID LIN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LIN, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. Declaratory and Injunctive Relief (28 U.S.C. §§ 2201, 2202); |
| THANH HUU TRAN, an individual, | 2. Cancellation of Deed of Trust (Cal. Civ. Code § 3412); and |
| Defendant. | 3. Slander of Title |
| | DEMAND FOR JURY TRIAL |

Plaintiff, David Lin ("Plaintiff"), complaining of Defendant, Thanh Tran ("Defendant"), alleges as follows, which allegations are based upon information and belief insofar as they pertain to Defendant's conduct:

## PARTIES

1. Plaintiff is an individual who resides, and resided at all times relevant to this Complaint, in the City of Irvine, County of Orange, State of California.

2. Defendant is an individual who resides, and resided at all times relevant to this Complaint, in the City of Happy Valley, County of Clackamas, State of Oregon.

1

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and more than $75,000 is in controversy.

4. The Court has personal jurisdiction over Defendant because he has sufficient contacts with the State of California, and has committed tortious acts directed to California. Among other things, Defendant incorporated or caused incorporation of BB West Hollywood Inc. ("BBWH") in the State of California, operated or caused operation of BBWH in the State of California, engaged in protracted negotiations for the sale of BBWH stock to a California resident (*i.e.*, Plaintiff's wife) and wrongfully recorded or caused recordation of a deed of trust in the State of California (specifically, in the Office of the Orange County Recorder) that clouds title to and ostensibly encumbers the Plaintiff's home, which is situated in the State of California (specifically, in the City of Irvine), and purports to secure an underlying agreement that the Defendant himself expressly rejected.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because (i) a substantial part of the events giving rise to Plaintiff's claims occurred in Orange County, California, which is within this judicial district, and (ii) the real property that is the subject of this action is situated in the City of Irvine, County of Orange, State of California, which is within this judicial district.

**GENERAL ALLEGATIONS**

**I.    Defendant's Incorporation of BBWH and Acquisition of Bel Bambini Inc.'s Assets**

6. Defendant incorporated or caused the incorporation of BBWH on or about March 2, 2012, in the State of California. Since its incorporation, BBWH has been, and as of the date of this Complaint is, organized under and subject to the laws of the State of California. BBWH's headquarters is (or was) located at 464 North Robertson Boulevard, West Hollywood, California 90048 ("BBWH

Headquarters"). Defendant is, and since the date of incorporation has been, BBWH's sole shareholder, officer and director.

7. Shortly after incorporating, BBWH acquired all, or substantially all, of the assets ("Acquired Assets") of Bel Bambini Inc, a California corporation ("BBI"). BBI was incorporated by Kristina Lin ("Mrs. Lin"), and Mrs. Lin was BBI's sole shareholder and director. Mrs. Lin is Plaintiff's wife and Defendant's sister, making Plaintiff and Defendant brothers-in-law. After transferring the Acquired Assets to BBWH, only BBHW conducted business under the Bel Bambini tradename. BBI was dissolved.

8. The Acquired Assets included, among other things, BBI's storefront retail property lease (*i.e.*, BBWH Headquarters), BBI's "Bel Bambini" registered trademark and all BBI's other tangible and intangible assets. From the date BBHW acquired BBI's assets, BBHW also employed Mrs. Lin. Presumably, this was to provide continuity in day-to-day operations despite ownership transferring from BBI to BBWH. BBWH employed Mrs. Lin to work at the BBWH Headquarters location until October of 2016, which is when BBHW ceased all retail operations.

## II.     Proposed Sale of BBWH Shares to Mrs. Lin

9. Beginning in or about July of 2016, Defendant and Mrs. Lin began negotiating terms of a possible share purchase, whereby Defendant would transfer all his BBWH shares (which constituted all of BBWH's issued and outstanding shares) to Mrs. Lin and Mrs. Lin would agree to assume and indemnify Defendant against all of BBWH's liabilities.

10. Defendant and Mrs. Lin actively negotiated for months and in late October of 2016, Mrs. Lin prepared, executed and forwarded to Defendant a "Stock Purchase Agreement" dated as of October 28, 2016 (the "Proposed Stock Purchase Agreement"). The Proposed Stock Purchase Agreement was accompanied by a "Short Form Deed of Trust" dated as of October 28, 2016 (the "Proposed Deed of Trust"), pursuant to which Plaintiff, as trustor, conditionally granted to Defendant,

as beneficiary, a security interest in Plaintiff's residence situated at 37 Exploration, Irvine, California 92618 (the "Plaintiff's Home") to secure performance under the Proposed Stock Purchase Agreement. True, correct and complete copies of the Proposed Stock Purchase Agreement and Proposed Deed of Trust, as sent to Defendant on October 28, 2016, are attached hereto collectively as **Exhibit "A"** and incorporated herein. Plaintiff's Home is owned by Plaintiff as his separate property; as Plaintiff was never involved in BBI or BBWH, Plaintiff offered Plaintiff's Home as security merely to facilitate Mrs. Lin's offer to purchase the BBWH stock as set forth in the Proposed Stock Purchase Agreement.

## II.     Defendant's Rejection of Proposed Stock Purchase Agreement and Continued Negotiations

11.    On November 11, 2016, Defendant sent an email message to Mrs. Lin and Plaintiff stating, in part, that "[a]fter review w/ my attorney in California, here are the proposed changes […]". Defendant's email included a revised clean and redline version of the Proposed Stock Purchase Agreement. By returning a revised document, Defendant necessarily rejected the Proposed Stock Purchase Agreement and Proposed Deed of Trust. This triggered additional negotiations.

12.    For more than a month following Defendant's rejection of the Proposed Stock Purchase Agreement and Proposed Deed of Trust and circulation of his counteroffer on November 11, 2016, Defendant sent multiple emails clearly showing Plaintiff, Defendant and Mrs. Lin were still engaged in active negotiations and that they had not yet entered into a final agreement. These emails include, but are not necessarily limited to, the following:

- Defendant's **November 15, 2016,** email stating, in pertinent part, "[w]e have revised the document and sent it to you on Friday (w/ a version in redline). Here they are again.";
- Defendant's **November 16, 2016,** email in which Defendant starts to become more aggressive and threatening, by stating

"[i]f I do not receive the signed documents, you can expect to hear from me and my lawyer on Thursday morning when I arrive in Orange County."

- Defendant's **December 6, 2016,** email stating, in pertinent part, "[h]ere are the documents we need signed: [¶] 1) [p]urchase agreement (providing you with [*sic*] 2) Promissory Note; and 3) Deed of Trust (which will be held for 6 months by my attorney).";

- Defendant's **December 14, 2016,** email stating, in pertinent part, "[f]ail to sign at your own peril."; and

- Defendant's **December 16, 2016,** email stating, in its entirety, that "[t]ime's up. Don't say we didn't give you a chance and didn't warn you.".

### III. Defendant's Wrongful Recordation of Proposed Deed of Trust Despite Absence of Any Underlying Obligation

13. On December 28, 2016, less than two weeks after sending the ominous December 16, 2016, email, Defendant recorded the Proposed Deed of Trust in the Office of the Orange County Recorder as Document/Instrument No. 2016000660132. A true, correct and complete copy of the recorded Proposed Deed of Trust is attached hereto as **Exhibit "B"** and incorporated herein.

14. Prior to recording the Proposed Deed of Trust, Defendant inserted the information Plaintiff had intentionally omitted and left blank, such as the date of the "Security Instrument" (*i.e.*, the deed of trust itself), the date of the "Agreement" (*i.e.*, the agreement underlying and secured by the deed of trust), the legal description of Plaintiff's Home and information regarding the "Fictitious Deed of Trust" (*i.e.*, the fictitious deed of trust recorded in the Office of the Orange County Recorder on August 17, 1964).

15. Plaintiff did not request or authorize Defendant to complete or alter the Proposed Deed of Trust in any manner whatsoever. Rather, Defendant took it upon himself to unilaterally complete the Proposed Deed of Trust by inserting the information Plaintiff had intentionally omitted and thereafter record the Proposed Deed of Trust without Plaintiff's consent and despite the fact that Defendant had himself rejected the underlying agreement purportedly secured by the Proposed Deed of Trust (*i.e.*, the Proposed Stock Purchase Agreement).

16. Based on his legal education and experience as a practicing attorney, Defendant knew, or should have known, that he had rejected the Proposed Stock Purchase Agreement by returning a counteroffer on November 11, 2016, and that altering and recording the Proposed Deed of Trust in the absence of an underlying obligation was wrongful. Indeed, Defendant's own emails clearly show he acknowledged the Proposed Stock Purchase Agreement was rejected. As late as December 14, 2016, Defendant asked Mrs. Lin to sign the revised stock purchase document and asked Plaintiff to sign the revised deed of trust (that would be conditionally delivered through Defendant's attorney).

17. Nonetheless, based on his legal education and experience as a practicing attorney, Defendant also knew, or should have known, that recording the Proposed Deed of Trust—even wrongfully—would create a cloud on title to Plaintiff's Home and would prevent Plaintiff from refinancing, encumbering, selling or otherwise accessing approximately $450,000 (the "Equity Amount") of equity in Plaintiff's Home. Consequently, as Defendant grew more and more frustrated by Plaintiff's and Mrs. Lin's refusal to agree to his terms, Defendant devised a scheme whereby he would claim the Equity Amount for himself by simply recording the Proposed Deed of Trust. Defendant undoubtedly believed this approach would preserve the Equity Amount for himself, provide Defendant a tactical advantage by depriving Plaintiff access to the Equity Amount (which, among other things, would impede Plaintiff from paying for legal counsel and

litigation required to obtain redress) and create leverage Defendant could exploit to force Mrs. Lin and Plaintiff into acquiescence.

18. Defendant was only partially correct. By wrongfully recording the Proposed Deed of Trust, Defendant has succeeded in depriving Plaintiff access to the Equity Amount. Consequently, Plaintiff is forced to make unsustainable and extremely burdensome ongoing regular monthly payments on a senior loan and is effectively prevented from refinancing the senior loan or selling Plaintiff's Home. Plaintiff is also prevented from accessing the Equity Amount for other purposes, such as to pay existing tax liability. Defendant has succeeded in harming Plaintiff (and continues to do so), but Plaintiff will not be terrified or harassed into submission.

**IV.  Defendant's Refusal to Cancel or Reconvey the Proposed Deed of Trust and Threat of Wrongful Foreclosure**

19. By letter dated February 2, 2017, Plaintiff's counsel informed Defendant's counsel (Matthew C. Vogt with the law firm of Cummins & White, LLP) that Defendant wrongfully recorded the Proposed Deed of Trust and demanded immediate remediation. As of the date of this Complaint, neither Defendant nor his legal counsel has responded and the Proposed Deed of Trust continues to cloud title to and ostensibly encumber Plaintiff's Home.

20. Defendant's willingness to wrongfully record the Proposed Deed of Trust also suggests Defendant will not hesitate in attempting to wrongfully foreclose. The looming threat of Defendant attempting to wrongfully foreclose the Proposed Deed of Trust is particularly concerning to Plaintiff for the following reasons: (a) the purported collateral (*i.e.*, Plaintiff's Home) is Plaintiff's primary and sole residence; (b) it is impossible for Plaintiff to know what Defendant may consider a sufficient basis for foreclosure because there is no specific agreement or obligation that underlies the Proposed Deed of Trust; and (c) Plaintiff's wife, Mrs. Lin, has filed a voluntary petition under chapter 7 of the United States Bankruptcy

Code, which will undoubtedly tempt Defendant to wrongfully foreclose the Proposed Deed of Trust.

## FIRST CLAIM FOR RELIEF

(Declaratory and Injunctive Relief – 28 U.S.C. §§ 2201, 2202)

21. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs as if fully set forth.

22. An actual and substantial controversy exists between Plaintiff on the one hand and Defendant on the other hand as to their respective legal rights and duties. Plaintiff contends that the Proposed Deed of Trust is of no force or effect whatsoever for the following reasons: (a) Plaintiff did not deliver the Proposed Deed of Trust because it was expressly dependent on Defendant's acceptance of the Proposed Stock Purchase Agreement; (b) the Proposed Deed of Trust does not secure performance of an underlying obligation because Defendant rejected the Proposed Stock Purchase Agreement; and (c) Defendant altered the Proposed Deed of Trust by inserting information Plaintiff purposefully omitted. Defendant contends that the Proposed Deed of Trust constitutes a valid and enforceable lien against Plaintiff's Home.

23. Plaintiff does not have an adequate remedy at law.

24. Plaintiff is entitled to a judicial declaration that the Proposed Deed of Trust is of no legal force or effect and does not constitute an enforceable lien against Plaintiff's Home.

25. Plaintiff is also entitled to necessary and proper relief, pursuant to 28 U.S.C. § 2202, in the form of injunctive relief barring Defendant from commencing or continuing any judicial or nonjudicial foreclosure of the Proposed Deed of Trust.

/ / /

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

(Cancellation of Written Instrument – Cal. Civ. Code § 3412)

26. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs as if fully set forth.

27. The Proposed Deed of Trust constitutes a written instrument.

28. Plaintiff has a reasonable apprehension that the Proposed Deed of Trust may cause serious injury to Plaintiff and his family. In fact, it has already done so in that Plaintiff is unable to access the Equity Amount to pay for living expenses, tax liability and the legal assistance necessary to remediate Defendant's wrongdoing.

29. The Proposed Deed of Trust is void or voidable as to Plaintiff for at least the following reasons: (a) Plaintiff did not deliver the Proposed Deed of Trust because it was expressly dependent on Defendant's acceptance of the Proposed Stock Purchase Agreement; (b) the Proposed Deed of Trust does not secure performance of an underlying obligation because Defendant rejected the Proposed Stock Purchase Agreement; and (c) Defendant altered the Proposed Deed of Trust by inserting information Plaintiff purposefully omitted.

## THIRD CLAIM FOR RELIEF

(Slander of Title)

30. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs as if fully set forth.

31. Defendant recorded the Proposed Deed of Trust, or caused it to be recorded, which casts doubts about Plaintiff's ownership of Plaintiff Home.

32. Once recorded, the Proposed Deed of Trust became a public record.

33. The Proposed Deed of Trust was and is false in that it purports to secure performance of the rejected Proposed Stock Purchase Agreement, was not delivered and was altered by Defendant.

34. Defendant knew the Proposed Deed of Trust was false prior to recording it, or acted with reckless disregard of its falsity, because Defendant himself had rejected the Proposed Stock Purchase Agreement and altered the Proposed Deed of Trust.

35. Defendant knew or should have recognized that someone else might act in reliance on the Proposed Deed of Trust, causing Plaintiff financial loss.

36. Plaintiff did in fact suffer immediate and direct financial harm because someone else acted in reliance on the Proposed Deed of Trust.

37. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

(a) That the Proposed Deed of Trust be declared void;

(b) That Defendant be ordered to deliver the Proposed Deed of Trust forthwith to the clerk of the Court for cancellation;

(c) For a preliminary and permanent injunction prohibiting Defendant from commencing or continuing any judicial or nonjudicial foreclosure of the Proposed Deed of Trust;

(d) For compensatory damages according to proof at trial;

(e) For an award of attorneys fees;

(f) For an award of punitive damages;

(g) For costs of suit herein incurred; and

(h) For such other, further and/or different relief as the Court deems just and proper.

Dated: March 6, 2017  ADAMS & PHAM APC

By: */s/ Joseph M. Adams*
Joseph M. Adams
Attorneys for Plaintiff,
David Lin

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: March 6, 2017           ADAMS & PHAM APC

                               By:  */s/ Joseph M. Adams*
                                    Joseph M. Adams
                                    Attorneys for Plaintiff,
                                    David Lin